# Illinois Official Reports

## Appellate Court

---

### *People v. McBride*, 2020 IL App (2d) 170873

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT McBRIDE, Defendant-Appellant. |
| District & No. | Second District No. 2-17-0873 |
| Filed | July 23, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 14-CF-1668; the Hon. Linda S. Abrahamson, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Lucas Walker, of State Appellate Defender's Office, of Elgin, for appellant. |
| | Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Ivan O. Taylor Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BRIDGES delivered the judgment of the court, with opinion. Justices McLaren and Hutchinson concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following separate jury trials, defendant Robert McBride was convicted of three weapons offenses and three drug offenses. On direct appeal, defendant contends that the trial court in the weapons trial committed constitutional error by admitting irrelevant evidence that he possessed a large amount of cash when he was arrested. Although we agree with defendant that the trial court erred in admitting the evidence, defendant does not articulate a theory of a constitutional violation. We conclude that the error was (1) evidentiary, and not constitutional, and (2) harmless because no reasonable probability existed that the jury would have acquitted defendant absent the error.

¶ 2 Defendant also argues that the trial court in the drug trial improperly imposed an extended-term sentence for the least serious drug offense. The State confesses error on defendant's sentencing claim.

¶ 3 We thus affirm defendant's convictions of the weapons charges. We also accept the State's confession of error and reduce the sentence for the least serious drug offense to the maximum nonextended term for that offense.

## I. BACKGROUND

¶ 4

¶ 5 A grand jury indicted defendant on five counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2014)) and five drug offenses. Each weapon count related to a different firearm that he allegedly possessed "in his own abode." Count IV charged defendant with possession of a Glock 9-millimeter handgun, count V charged defendant with possession of a "High Point [*sic*]" 9-millimeter handgun, count VI charged defendant with possession of a Beretta handgun, count VII charged defendant with possession of a Mossberg shotgun, and count VIII charged defendant with possession of a Taurus handgun.

¶ 6 The five drug counts were count I, unlawful possession (within 1000 feet of a church) with intent to deliver 1 gram or more but less than 15 grams of a substance containing cocaine (720 ILCS 570/40l(c)(2), 407(b)(1) (West 2014)); count II, possession with intent to deliver 1 gram or more but less than 15 grams of a substance containing cocaine (720 ILCS 570/40l(c)(2) (2014)); count III, unlawful possession of 15 grams or more but less than 100 grams of a substance containing heroin (720 ILCS 570/402(a)(2)(A) (West 2014)) (later amended to less than 15 grams); count IX, unlawful possession of less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 2014)); and count X, unlawful possession (within 1000 feet of an assisted living center for senior citizens) with intent to deliver 1 gram or more but less than 15 grams of a substance containing cocaine (720 ILCS 570/40l(c)(2), 407(b)(1) (West 2014)).

¶ 7 On defendant's motion, the court severed the drug charges from the weapons charges, and the State elected to try the weapons charges first. Defendant moved *in limine* to bar the State from introducing evidence that the police officers, while executing the search warrant that led to defendant's arrest, had found more than $2000 in cash in a bedroom that the State contended was defendant's. Specifically, defendant sought to exclude evidence of (1) $184 found in a blue bank pouch found in the sleeve of a men's sweater in the bedroom, (2) $1907 found in " 'various' pockets" of a pair of men's blue jeans in the bedroom, and (3) $14 found on the

floor near a bed. Defendant argued that the presence of the cash was not relevant to the State's proof that he possessed the weapons. The court denied defendant's motion.

¶ 8    At trial, the State's evidence showed that defendant was arrested when, on September 17, 2014, at about 2:45 p.m., a group of approximately 15 Aurora police officers executed a warrant permitting the search of a house on La Salle Street in Aurora. Nine Aurora police officers who executed the warrant and a fingerprint examiner testified for the State.

¶ 9    Officer Ron McNeff of the Aurora Police Department testified that he took his assigned position to the rear of the house. He heard a window open and saw defendant appear at a second-floor window at the southeast corner of the house. Defendant threw two guns across a fence and into the yard of the house to the south. Two handguns, a Glock and a Hi-Point, both heavily scratched, were found on a patio in that yard. Defendant's fingerprint was found on the slide of the Glock.

¶ 10   The officers searching the house entered the northeast bedroom on the second floor. On the bed they found a .22-caliber Taurus handgun, and in the closet, they found a Mossberg 12-gauge shotgun and a Beretta handgun. The Mossberg, covered by a soft case, was leaning against the wall in a recess in the closet; the Beretta was holstered and hanging from a peg. In the closet, they also found a safe that contained ".22 Long Rifle Hollow Point, and 9 mm Luger" ammunition. Four people were in the house when the officers entered: defendant, two young children, and defendant's girlfriend, Gabriella Chairez.

¶ 11   The State contended that defendant and Chairez occupied the northeast bedroom. It supported that contention with objects and photographs of objects found in that bedroom:

In the closet, a purse containing Chairez's driver's license that showed her address as North Chicago.

A "bill" or packing slip from Canon addressed to "Robert McBride" at the La Salle Street address. Defendant identified the slip as relating to black ink cartridges and photo paper that he ordered for Chairez. The officers found this on top of a plastic box with drawers.

A plastic drawer containing an electric shaver and what an officer described as a prescription bottle with the name "McBride" on it. A photograph of the drawer shows, among other things, four prescription bottles, two of which bore the name "McBride."

A spiral-bound notebook with defendant's name on the front cover. A photograph of one page contained writing in two hands, one neat and one scrawling. Defendant identified the neat handwriting as Chairez's and the scrawling handwriting as his.

The upper part of the page contained what appeared to be receipts for a planned performance that were written in the neat handwriting.

A Yahoo e-mail address for "McBrideRobert" and what defendant identified as the account's password are written in the scrawling handwriting on the lower part of the page.

¶ 12   Over defendant's renewed objection, the trial court admitted the State's photographs showing the cash they found in the bedroom. A photograph depicted the zippered bank pouch containing what appeared to be the edges of many United States bank notes. An officer testified that the pouch came from the sleeve of a men's dark-colored jacket in the bedroom closet. Two other photographs depicted more than $1000 in cash. One photograph showed the bills in what appears to be the right front pocket of a pair of men's jeans, which defendant later admitted

- 3 -

were his. (Defendant was wearing basketball shorts or boxers when he was arrested.) Another photograph shows bills from that pocket fanned out in a gloved hand. Sixteen bills are visible, 13 of which are clearly $100 bills. The jeans also held a wallet containing cash and an Illinois driver's license in defendant's name with his address given as a Batavia residence.

¶ 13    Investigator Dave Tellner interviewed defendant at the house. Tellner testified that defendant admitted that he was the person the police saw throwing guns out the window. Defendant explained that he was lying in bed when he heard the police coming in the door. He was afraid, so he threw the guns out the window. He told Tellner that there was a ".22" in the northeast bedroom; defendant told Tellner it could be found on "his bed in his bedroom." Defendant also said that they might find a shotgun in the closet of "Cassey's" bedroom. ("Cassey" was Cassey Deuchler, another resident of the house.) The .22-caliber handgun was his, but he was holding the other guns as a favor for a person he knew as "Ro-Ro." Tellner questioned defendant again at the Aurora Police Department. Defendant did not deny his previous admission but refused to make a written statement.

¶ 14    Defendant testified that he worked as a talent promoter: he arranged shows for musicians and comedians. Chairez was the mother of his five-year-old son, R.M., and his four-year-old daughter, A.M. Chairez lived in the house with Deuchler, Deuchler's boyfriend, defendant's two children, Chairez's three other children, Chairez's two brothers, and a girlfriend of one of those brothers. Chairez shared the northeast bedroom with her brother Ricky but would sleep with her daughters if Ricky brought a girlfriend home. Deuchler and her boyfriend shared the southeast bedroom (the one from which the guns had been thrown). Chairez's young daughters, R.H. and A.M., slept in the northwest bedroom. Another of Chairez's brothers and his girlfriend had the southwest bedroom. Her three boys shared the attic bedroom.

¶ 15    Defendant denied living at the house. He claimed that, in September 2014, he was paying rent to live with his aunt and her four children in an Aurora apartment. The Aurora apartment address was on file for his government food assistance. He did not keep belongings in the house on La Salle Street. He purchased an ink cartridge from Canon for the printer that Chairez kept in her bedroom. The spiral-bound notebook belonged to Chairez; defendant had given her his e-mail address and password so she could check his e-mail. He believed that the prescription bottle belonged to his son.

¶ 16    Defendant testified that, when he arrived at the house on the day of the arrest, he took off his shirt and jeans; the jeans with the cash in the pocket were his. However, some of the men's clothing that the police had photographed belonged to Ricky and another of Chairez's brothers. Defendant denied ownership of the bank pouch, the cash, and the car key found on the floor. The key was for Ricky's Honda, which was parked behind the house on the day of the arrest.

¶ 17    Defendant arrived at the house at about 1:45 p.m. to pick up Chairez so they could work on an event he was promoting. He was planning to pay for radio promotion and a deposit for a venue. The two girls planned to go along, but they were not ready, and defendant was in the girls' bedroom helping his daughter dress when he heard the police coming up the stairs.

¶ 18    Defendant denied admitting to Tellner that he threw the guns out the window, denied that Tellner asked him about other guns in the house, and denied telling Tellner that the gun on the bed was his. He denied that any of the guns in the house were his or that he was holding guns for "Ro-Ro." The only gun he saw that day was a black gun in a plastic container next to Chairez's bed; he had not thrown any guns out a window. Defendant agreed that he, Chairez, and the two girls were the only people in the house when the police executed the warrant.

¶ 19    Officer Michael Corrigan of the Aurora Police Department testified in rebuttal. Corrigan had heard Tellner questioning defendant about the guns thrown out the window and defendant admitting that he had done it. He also heard defendant say that "there was a .22 Caliber handgun located above his bed in his bedroom, and that there was also a shotgun located in a closet, which he identified as Cassey's closet." He also heard defendant say that the .22 "was the only pistol that belonged to him" and that he was holding the others for Ro-Ro.

¶ 20    The trial court admitted proof of defendant's prior conviction of unlawful possession of a controlled substance. The court gave the jury the following instruction concerning the use of prior convictions as evidence:

> "Ordinarily, evidence of a defendant's previous conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged.

> However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant has been previously convicted of a felony offense, you may consider evidence of a defendant's prior conviction of a felony offense for the purpose of determining whether the State has proved that proposition."

¶ 21    The court instructed the jury on both actual and constructive possession. During its deliberations, the jury sent a note to the court explaining that, although the members of the jury "agreed on three of the five counts," they could not agree about the remaining two counts. They requested a "legal definition of intention" and clarification of whether "knowing about an item [is] proof of intention and the power to exercise control over a thing." The court instructed the jury that it had received the relevant instructions and should continue to deliberate.

¶ 22    The jury found defendant guilty of possessing three of the handguns: the Glock, the Hi-Point, and the Taurus. It found him not guilty of the two weapons counts related to the Mossberg shotgun and the Beretta handgun.

¶ 23    Defendant filed a posttrial motion arguing, among other things, that the trial court erred when it allowed the State to introduce evidence of the cash found in the northeast bedroom. The court denied the motion.

¶ 24    Defendant was tried on the drug counts, the jury found him guilty of three of them, and the court sentenced defendant on all convictions. It imposed concurrent six-year prison terms for the three Class 2 felony convictions of unlawful possession of a weapon by a felon, concurrent nine-year terms for the two Class 1 felony convictions of unlawful possession of cocaine with intent to deliver, and an extended term of four years for the Class 4 felony conviction of unlawful possession of heroin. The court imposed the extended term based on defendant's 2008 conviction of unlawful possession of a controlled substance, a Class 4 felony. Defendant did not move for a reduction of his sentences, and he filed a timely notice of appeal.

¶ 25                              II. ANALYSIS
¶ 26                    A. Admission of the Evidence of Cash
¶ 27    On appeal, defendant contends that the trial court erred in allowing the State to introduce evidence of the cash found in the blue jeans and in the bank pouch in the jacket sleeve. He asserts that the evidence was not relevant to whether he possessed the guns and that the evidence of the cash, "along with the presentation of [his] prior felony [drug] conviction, could

only serve to try [to] persuade the jury that [he] was a drug dealer who illegally possessed firearms." He further contends that he is entitled to a new trial because the State cannot prove that the improperly admitted evidence was harmless beyond a reasonable doubt.

¶ 28   The State responds that the evidence of the cash was admissible because it was relevant to show that the house searched was defendant's residence and that the northeast bedroom was his. Alternatively, the State asserts that any error was mere evidentiary error, not constitutional error, and that the admission of the evidence was harmless under the standard for evidentiary error: that no reasonable probability existed that the jury would have acquitted defendant absent the error.

¶ 29   We conclude that the evidence was not relevant and should have been excluded. However, defendant has not persuaded us that the constitutional-harmless-error standard applies here. Applying the evidentiary-harmless-error standard, we conclude that the error was harmless.

¶ 30   Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011); see also *People v. Illgen*, 145 Ill. 2d 353, 365-66 (1991). "All evidence must be relevant to be admissible." *People v. Dismuke*, 2017 IL App (2d) 141203, ¶ 63. "[E]vidence is inadmissible if it has little probative value due to its remoteness, uncertainty or the possibility that it will be unfairly prejudicial." *People v. Orange*, 168 Ill. 2d 138, 161 (1995). "[T]he prosecution has no entitlement or right to present evidence that is unfairly prejudicial when equally probative, nonprejudicial evidence is available and will serve the same purpose." *People v. Walker*, 211 Ill. 2d 317, 339 (2004). Whether evidence meets the relevancy requirement for admissibility is a matter for the trial court's discretion. *E.g.*, *Dismuke*, 2017 IL App (2d) 141203, ¶ 63.

¶ 31   We agree with defendant that the evidence of the cash was not relevant to the issue of possession of the weapons. The State argued that the evidence of the cash tended to show defendant's occupancy of the northeast bedroom. The presence of defendant's driver's license tended to show that defendant owned the jeans where some of the cash was found, and his removal of those jeans in the northeast bedroom indicates that he occupied the bedroom to a degree, even if the house was not his only residence. However, the presence of the cash was not probative of his control over the bedroom or of any of the weapons.

¶ 32   Moreover, the evidence of the cash was unfairly prejudicial. Carrying large amounts of cash can be associated with criminal enterprises. Viewed in the context of defendant's prior felony drug conviction, the admission of evidence of the cash tended to portray defendant as a drug dealer. That portrayal tended to undo the protection from severing the weapons counts from the drug counts. The court abused its discretion in admitting the evidence of the cash because its probative value was outweighed by its prejudicial effect.

¶ 33   Although we agree with defendant that the admission of the evidence of the cash was error, we agree with the State that the error was harmless and does not require a new trial. Where, as here, the error is not structural and harmless-error analysis is proper, the State must persuade the reviewing court that the error was not prejudicial: the State must prove under the applicable

standard that the jury verdict would have been the same absent the error.[1] See *People v. Herron*, 215 Ill. 2d 167, 181-82 (2005).

¶ 34    The parties agree that the error is subject to a harmless-error analysis but disagree over which harmless-error standard applies. Defendant advocates the constitutional-harmless-error standard, contending that the State must show that the error was harmless beyond a reasonable doubt. The State advocates the evidentiary-harmless-error standard, arguing that it needs to show that there is no reasonable probability that the jury would have acquitted the defendant absent the error. See *In re E.H.*, 224 Ill. 2d 172, 180 (2006) (setting out both standards).

¶ 35    Here, defendant hints at a claim of a due-process violation,[2] but we decline to manufacture a constitutional argument on his behalf. We do not address the error under the constitutional-harmless-error standard.

¶ 36    Defendant contends that the error here was akin to the improper admission of other-crimes evidence, thus requiring the use of the constitutional-harmless-error standard. This argument is unpersuasive on its own terms. The admission of evidence of defendant's cash was akin to improper other-crimes evidence in only one respect: it prejudiced defendant by casting him in a bad light. The evidence improperly tended to portray defendant as a drug dealer, but a person may possess large amounts of cash for legitimate reasons. Indeed, defendant presented evidence of an innocent explanation: his business as a promoter required him to make cash payments. Such an innocent explanation is ordinarily not available to a defendant confronted with other-crimes evidence.

¶ 37    Defendant cites *People v. Rosado*, 2017 IL App (1st) 143741, ¶ 40, for the proposition that the evidence of cash was other-crimes evidence amounting to constitutional error. However, in *Rosado*, the difference between the evidentiary- and constitutional-harmless-error standards was not at issue: *the State* argued that any evidentiary errors were "harmless beyond a reasonable doubt." *Rosado*, 2017 IL App (1st) 143741, ¶ 39. In a case where the difference between the standards is not dispositive, a court may address harmlessness of an evidentiary error *as if* under the constitutional-harmless-error standard. *E.H.*, 224 Ill. 2d at 180-81. In *Rosado*, the State simply acceded to the stricter standard. Nevertheless, as *E.H.* makes clear, the evidentiary-harmless-error standard applies in cases such as this one where the defendant does not raise a claim of constitutional error.

¶ 38    Applying the harmless-error standard for evidentiary errors, we conclude that the admission of the evidence of the cash was harmless. We address the two counts relating to the guns thrown out the window—the Glock and a Hi-Point—separately from the one relating to the gun found on the bed—the Taurus.

¶ 39    To support a conviction of possession of contraband, the State must prove (1) possession of the contraband and (2) knowledge of the contraband's presence. *People v. Givens*, 237 Ill. 2d 311, 334-35 (2010) (stating the rule for a controlled substance). When the State's theory is that the defendant was in actual possession of contraband, it must show that the contraband

---

[1]The fact that defendant was found not guilty on two of the weapons charges clearly evinces that the admission of the cash did not in fact prejudice the jury, as they did consider the issue of actual versus constructive possession.

[2]We do not decide whether a due-process violation requires application of the constitutional-harmless-error standard. We merely conclude that defendant has failed to even argue that such a violation occurred.

was "in the immediate and exclusive control of defendant." *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992). "The rule that possession must be exclusive does not mean, however, that the possession may not be joint." *Givens*, 237 Ill. 2d at 335. Further, possession need not be actual. A defendant has constructive possession of contraband when he or she lacks "actual personal present dominion" over the contraband but nevertheless has "an intent and capability to maintain control and dominion." *Frieberg*, 147 Ill. 2d at 361. Actual personal present dominion is shown by acts such as hiding or trying to dispose of the contraband. *E.g.*, *People v. Carodine*, 374 Ill. App. 3d 16, 25 (2007).

¶ 40   First, there is no reasonable probability that, absent the admission of the evidence of cash, the jury would have acquitted defendant of possessing the Glock and the Hi-Point. See *E.H.*, 224 Ill. 2d at 180. The State's evidence overwhelmingly demonstrated defendant's actual and constructive possession of those weapons. McNeff testified that he saw a black male whom he identified as defendant throw two guns out the window of a bedroom. One of those guns had defendant's fingerprints on the slide. Defendant was the only adult male found in the house. We deem this to be overwhelming evidence that defendant tried to dispose of the Glock and the Hi-Point. That evidence overwhelmingly established his intent and capability to maintain control and dominion of those two guns and thus his constructive possession of them. To the extent that McNeff observed defendant holding the guns, his observation established defendant's actual possession as well.

¶ 41   Second, circumstantial evidence, corroborated by defendant's inculpatory statements to Tellner and Corrigan, sufficiently established defendant's possession of the Taurus such that the erroneous admission of the evidence of the cash was harmless. Tellner testified that defendant said that the police would find a ".22" on the bed in the northeast bedroom. Corrigan also testified that defendant said that "there was a .22 Caliber handgun located above his bed in his bedroom." Both officers testified that defendant admitted ownership of the Taurus. Defendant's inculpatory statements were corroborated by circumstantial evidence of his control over the bedroom. The Taurus was found on the bed in a bedroom used by defendant. Indeed, he had removed his jeans and put them aside in that room, so that he was wearing only basketball shorts or boxer shorts when he was arrested. Thus, the jury heard ample evidence of defendant's intent and capability to maintain control and dominion of the Taurus. The jury implicitly rejected defendant's assertions that he did not possess the Taurus because he resided elsewhere and, at worst, shared the bedroom with Chairez. To accept that defendant lacked constructive possession of the Taurus would require rejecting as complete fabrications the testimony of Tellner and Corrigan. There was no reasonable probability that, absent the erroneous admission of the evidence of the cash, the jury would have acquitted defendant of possession of the Taurus.

¶ 42   Citing *People v. Lee*, 2019 IL App (1st) 162563, ¶ 67, defendant argues that the jury's note about its difficulty reaching a verdict on two counts requires us to conclude that the erroneous admission of the evidence of the cash was not harmless. We disagree. Long jury deliberations and notes during deliberations indicating an impasse can show that the evidence in a case was closely balanced. *Lee*, 2019 IL App (1st) 162563, ¶ 67. To be sure, the note showed the closeness of the evidence of defendant's possession of the Beretta and the Mossberg. Indeed, the jury acquitted defendant of those charges.

¶ 43   However, the jury note made clear that the jurors were struggling with two counts for which it was important to resolve whether "knowing about an item [is] proof of intention and the

power to exercise control over a thing." The two counts for which defendant's mere knowledge was most relevant were those relating to the Berretta and the Mossberg: defendant told Tellner that he knew where those guns were kept, and the police found them where he likely would have seen them. By contrast, the jury found defendant guilty of the other three counts, and the jury note has no bearing on the strength of the evidence of those offenses.

¶ 44    For the foregoing reasons, we affirm defendant's convictions of unlawful possession of a weapon by a felon.

¶ 45                            B. Extended-Term Sentence

¶ 46    As a final matter, defendant asserts that the trial court improperly sentenced him to an extended term for unlawful possession of less than 15 grams of heroin, a Class 4 felony, when he was also sentenced for unlawful possession of cocaine with intent to deliver, a Class 1 felony. The State confesses that the extended-term sentence was error but disagrees with defendant as to the proper remedy.

¶ 47    Defendant points out that, under section 5-8-2(a) of the Unified Code of Corrections (730 ILCS 5/5-8-2(a) (2014)), when a defendant has been convicted of offenses of different classes, the court may impose an extended-term sentence only for the conviction of the most serious class. The State asks us to reduce defendant's Class 4 felony conviction to three years' imprisonment, the statutory maximum nonextended term. Defendant, by contrast, asks us to vacate the extended-term sentence and remand the matter for a new sentencing hearing, to impose the minimum term, or to impose an "appropriately reduced term within the Class 4 felony sentencing range of one to three years' imprisonment." By imposing an extended-term sentence, the trial court implicitly found that defendant's offense warrants a prison term of at least three years, and defendant has not argued why he is entitled to a shorter sentence. Thus, we reduce defendant's sentence to the three-year statutory-maximum term.

¶ 48                            III. CONCLUSION

¶ 49    For the reasons stated, we affirm as modified the judgment of the circuit court of Kane County.

¶ 50    Affirmed as modified.