2022 IL App (1st) 192197-U

No. 1-19-2197

Order filed September 19, 2022.

First Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 6256 |
| | ) | |
| JOHN MONTGOMERY, | ) | The Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE LAVIN delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   This court affirms the judgment of the circuit court convicting defendant of attempted murder.

¶ 2    Following a bench trial, defendant John Montgomery was found guilty of attempted murder and then sentenced to a total prison term of 38 years. Defendant now challenges the sufficiency of the evidence to sustain his conviction, arguing he merely shot in the direction of the victims absent an intent to kill. He also challenges the court's admission of evidence

involving his gang affiliation and his associate's harassment of another trial witness. He further contends his trial attorney was constitutionally ineffective. We affirm, and we also order a corrected mittimus.

¶ 3                                     BACKGROUND

¶ 4      Defendant was arrested and charged with attempted murder and various gun offenses after he shot at a car on March 22, 2016, that turned out to be occupied by two Chicago police detectives, Nicholas Xanos and Rolando Rodriguez. They were investigating the murder of drug dealer Jarvis Coleman that took place earlier that same day. Incidentally, defendant was also charged with Coleman's murder after it was discovered that the same weapon was used in both offenses.

¶ 5      Defendant elected to be tried simultaneously, having a jury assess the murder charge and the trial judge the attempted murder charge. The jury acquitted defendant of murder. As such, he appeals only the attempted murder conviction. Trial evidence relating to that offense showed that around 5:45 p.m. on March 22, the detectives drove into an alley with windows down in an unmarked patrol car. Both detectives wore bulletproof police vests, albeit with open overcoats on. Detective Xanos, who was driving slowly, testified he had something in his eye, so he looked into the side mirror, which was about a foot from his head, and then "watched the mirror get shot off right in front" of him. The shots came from straight ahead, about 30 to 40 feet away, and when he looked up, he saw two people exit to the west. Seven fired cartridge casings (.380 caliber) were later recovered from the scene, as was the shot-off squad car mirror. A light pole south of the vehicle also showed a defect or bullet hole consistent with the shooting. Photographic exhibits entered into evidence corroborated Detective Xanos' testimony.

¶ 6    Defendant's friend, Derrick Johnson, was immediately detained. Defendant, however, ran into a nearby home on Maypole Avenue, just north of the crime scene, entering without the consent of the residents. One resident, Trounia Lowe, testified that she knew defendant from grade school and that she had heard five to six shots just prior to his entry. Once there, defendant reported, contrary to his later statements, that he had been shot at. Lowe asked him to leave, but instead, he locked her out of her own home and then left his gun in a laundry basket and his jacket on the floor before he was kicked out of the house by Lowe's mother and grandmother. Police later discovered the gun there with the barrel sticking out and the slide protruding backwards, so the gun could not fully close. In other words, it had malfunctioned and jammed due to one bullet being "misfed into the weapon," which prevented it from further firing. It still had a magazine but no rounds of ammunition left (except for the misfed bullet). Defendant, who was later walking on a nearby street absent a jacket on that chilly evening, was detained around 6 p.m. and brought to the police station.

¶ 7    Once there and following *Miranda* warnings, defendant admitted to police that he saw a vehicle drive the wrong way down the street before it turned into the alley, and it was driving fast. According to defendant, he then told Johnson to look at the vehicle in the alley, he pointed his gun at it, and he shot four to five times before running away and leaving his gun and jacket at the Maypole home. Defendant also gave a videotaped statement with respect to this incident to the Assistant State's Attorney on the case and tested positive for gunshot residue.

¶ 8    At trial, Johnson testified that defendant fired shots specifically at the car in the alley, although Johnson could not identify it as a police vehicle. He also testified that the car was driving fast. Johnson ultimately acknowledged telling police that defendant shot at the car, he signed a statement to that effect, and he offered that testimony under oath before a grand jury.

Yet another individual, Malik Whitelow, testified that on the evening in question, he was walking his dog when he saw defendant and Johnson near the alley.[1] Whitelow testified that defendant walked towards an undercover police vehicle containing officers dressed in "suits" and started shooting "straight in front of him" at the police. He shot more than once. Although Whitelow identified defendant as the shooter to police shortly after the incident and also before a grand jury, he claimed not to see defendant in open court. In addition, footage from a nearby pod camera that depicted the area around the scene of the shooting was shown at trial. The parties further stipulated that defendant did not possess a valid Firearm Owners Identification Card (FOID) or Concealed Carry License (CCL).

¶ 9     After evidence and argument, the court found defendant guilty of attempted murder, aggravated discharge of a firearm, criminal trespass, and aggravated unlawful use of a weapon (AUUW). As for the attempted murder charge, the court specifically found defendant was aiming at the people in the car, although he did not know them to be detectives, where defendant "shot up the side view mirror, close to the head of the driver of the car, who happened to be in the process *** of leaning to get something out of his eye." The court further found the jammed gun and number of shots significant, stating that defendant "didn't just shoot once, but he was trying to blow up the car and everyone who may have been in it." The court also stated, "And the only reason that you would *** shoot repeatedly, constantly, without stopping until the gun *** is either empty or jams is because you're trying to kill people. And that's exactly what [defendant] was trying to do." During sentencing, the trial court repeated that defendant opened fire at a car even though no one was shooting at him, and "but for the side-view mirror, I think he would have killed the police officer." Defendant was subsequently sentenced to 38 years for the

---

[1]Shortly after the incident, police initially arrested Whitelow, and Detective Rodriguez identified him as the shooter.

attempted murders and three years for the AUUW, all to run concurrently.[2] The trial court found all other convictions merged. Defendant appealed.

¶ 10                                    ANALYSIS

¶ 11    Defendant now challenges the sufficiency of the evidence. When considering a challenge to a criminal conviction based on the sufficiency of the evidence, we must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. Our function is not to retry the defendant or substitute our judgment for that of the trier of fact. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Rather, the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence. *People v. Wright*, 2017 IL 119561, ¶ 70. A conviction will not be set aside on appeal unless the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *Id.*

¶ 12    Defendant argues the evidence was insufficient to establish that he intended to kill the occupants of the vehicle. We disagree. For a conviction of attempted murder, the State must

---

[2]More specifically, the trial court ultimately found defendant guilty of the attempted first-degree murders of both Detective Xanos (Count 3) and Detective Rodriguez (Count 4), during which time defendant personally discharged a firearm. As set forth, the court noted defendant was trying to "blow up the car and everyone who may have been in it." The offense is a Class X felony (carrying 6 to 30 years) for which 20 years shall be added to the term of imprisonment. See 720 ILCS 5/8-4(c)(1)(C) (West 2016); 730 ILCS 5-4.5-25(a) (West 2016). The trial court found the other attempted murder charges (Counts 1 and 2) merged into Counts 3 and 4. Thus, the record indicates the court imposed a sentence of 38 years on Count 3 (evidently, 18 years for the Class X offense, followed by 20 years for the personal discharge of the firearm) and 38 years on Count 4 (with the same break-down), along with the 3-year term for AUUW, all to run concurrently. Defendant's notice of appeal largely reflects this understanding. Yet, the mittimus shows that only one 38-year sentence was imposed on Count 1. Based on the record, the mittimus should be corrected to reflect a sentence of 38 years on Count 3, to run concurrently with a sentence of 38 years on Count 4, along with the concurrent sentence of 3 years for AUUW on Count 10. See *People v. Jones*, 376 Ill. App 3d 372, 395 (2007) (noting, when the oral pronouncement of the court and the written order are in conflict, the oral pronouncement controls).

prove beyond a reasonable doubt that the defendant, with the specific intent to commit murder, did any act that constituted a substantial step toward the commission of murder. 720 ILCS 5/8-4(a) (West 2016); 720 ILCS 5/9-1(a) (West 2016); *In re T.G.*, 285 Ill. App. 3d 838, 843 (1996). The requisite intent to kill is a state of mind that can be proved by the surrounding circumstances, including the character of the assault and the use of a deadly weapon. *People v. Strickland*, 254 Ill. App. 3d 798, 808 (1993). Firing a gun at a person supports the conclusion that the person doing so acted with an intent to kill. *Id*; *People v. Teague*, 2013 IL App 110349, ¶ 26, and cases cited therein; see also *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 75 (same). Incidentally, it also constitutes a substantial step towards committing murder. See *People v. Brown*, 341 Ill. App. 3d 774, 781 (2003).

¶ 13    Here, the circumstantial evidence, when considered in a light most favorable to the prosecution, was sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant had specific intent to commit murder based on the weapon used - a gun -, the seven shots fired from a distance of 30 to 40 feet, the jamming of the gun, and the proximity of the shot to the detective's head, which was within about a foot. See *People v. Green*, 339 Ill. App. 3d 443, 451-52 (2003) (finding, a rational jury could have found beyond a reasonable doubt that Green intended to kill the officers when he shot at them). That is, we cannot say the trial court's determination that defendant was aiming for the detectives, where he shot off the side-view mirror as the detective leaned to get something out of his eye and shot multiple times specifically at the vehicle, was so unreasonable, unsatisfactory or improbable that there remains a reasonable doubt of defendant's guilt. Defendant additionally ran into the Lowe's nearby home. Rather than leaving the home, as he was asked to do, he remained and left both his jacket and the jammed

gun, which police later found. This serves as additional circumstantial evidence of defendant's lawlessness that evening.

¶ 14     Defendant nonetheless asserts that he lacked intent to kill where "[n]o shots were fired into the body of the car," such as into the front windshield, and he was merely trying "to scare off the driver." Similar arguments were raised and rejected in *Teague*, 2013 IL App 110349, ¶¶ 25-29, which held that "[p]oor marksmanship is not a defense to attempted murder," and it is for the trier of fact "to determine whether defendant lacked the intent to kill or whether defendant was simply unskilled with his weapon and missed his targets." *Id.* ¶ 27. That defendant narrowly missed the driver and then missed the passenger and other areas of the vehicle does not negate intent. The trial court carefully considered the evidence, the witness' credibility, the evidentiary conflicts, and drew the inference that defendant intended to kill the vehicle's occupants. See *id.* ¶ 26. As a reviewing court, we defer to that reasonable conclusion.

¶ 15     Defendant's reliance on *People v. Upton*, 230 Ill. App. 3d 365 (1992), is also misplaced, as reversal of the attempted murder conviction was based in part on plain error in excluding the defendant's state-of-mind testimony as to intent, which was essential to the defense. This case, by contrast, addresses sufficiency of the evidence, and defendant did not offer any testimony, exculpatory or otherwise here. See also *People v. Rigsby*, 383 Ill. App. 3d 818, 822-23 (2008) (admissibility and sufficiency of evidence are distinct issues).

¶ 16     Defendant next contends the trial court erred in allowing evidence of gangs referenced in several jailhouse calls between defendant and his friend Johnson (who was present at the shooting), which the trial court permitted to establish motive as to the murder. Defendant also complains about the stipulated evidence that Johnson was facing a charge for harassing Whitelow via Facebook, which he did in an effort to force Whitelow to recant his statement to

police.[3] Defendant further complains about the detective's testimony to the underlying facts on that charge, claiming it was hearsay. Last, defendant maintains his defense counsel was constitutionally ineffective for failing to object to evidence contained in one of the jailhouse phone calls, this time from Johnson (who was also in jail) to an unidentified person, which defendant contends references other-crimes' evidence.

¶ 17    We agree with the State that much of this evidence was admitted for limited purposes relating to the murder charge, and was not considered in defendant's bench trial for attempted murder, and regardless, defendant cannot establish any prejudice.

¶ 18    A trial court is presumed to know the law and to have considered only competent evidence in making a determination on the merits. *People v. Howery*, 178 Ill. 2d 1, 32 (1997); *People v. Jones*, 2017 IL App (1st) 143403, ¶ 36; see also *People v. Naylor*, 229 Ill. 2d 584, 603 (2008) (noting, we must presume the trial court considered only admissible evidence and disregarded inadmissible evidence). To rebut this presumption, the record must affirmatively show that the trial court actually used the evidence improperly as alleged. *Jones*, 2017 IL App (1st) 143403, ¶ 36. Moreover, the risk of prejudice is generally presumed to be less in a bench trial. *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 68.

¶ 18    Here, the trial judge stated, "I'm mindful of the fact that we had the simultaneous jury trial and bench trial" and "I am wholly respectful and mindful of the jury's decision" in acquitting defendant of murder. Moreover, the judge stated: "This case will rise and fall solely on the evidence against him as to these charges and this indictment for attempted murder, et cetera[.]" The judge then went on to delineate its reasoning, as set forth above, for finding

---

[3]The State notes that the only question the prosecutor asked at trial regarding the gang reference in the jailhouse calls was presented to Johnson. The prosecutor asked: "You swore on the Four Corner for him [defendant], right?" Johnson responded that defendant was his friend.

defendant intended to murder the vehicle's occupants after it was basically conceded that defendant was in the alley shooting at the vehicle. The judge thereby rejected defense counsel's strident arguments that defendant should be found guilty of the lesser offense of aggravated discharge of a firearm, which are the same he now makes on appeal. See 720 ILCS 5/24-1.2(a)(2) (West 2016).

¶ 19    In his findings, the judge made no mention of the evidence that defendant now claims was prejudicial (nor did the State in closing), and there's simply no indication that evidence factored into the court's ultimate determination in this bench trial that defendant elected to be held simultaneously with the jury trial for murder. Defendant therefore has failed to rebut the presumption that the court considered only competent evidence in reaching its guilty finding. See *Jones*, 2017 IL App (1st) 143403, ¶ 36; see also *People v. Nash*, 2013 IL App (1st) 113366, ¶ 24 (noting, there was no indication that the trial court improperly considered the other-crimes evidence, so defendant was not denied a fair trial).

¶ 20    Even so, we would note that the stipulated evidence and testimony as to witness harassment was relevant and admissible to explain Whitelow's inability to recognize defendant in court, despite having identified him to police as the shooter and testified before a grand jury. See *People v. Whitelow*, 306 Ill. App. 3d 29, 39 (1999). We would also note that defendant argues his counsel was ineffective for failing to seek redaction of the sentence fragment, "***right after the lick – right after that lick bro us running through Ottie – back of Ottie alley bro," which Johnson referenced in his jailhouse call to an unidentified person and which was presented at trial during Johnson's testimony. Defendant maintains Johnson previously used the term "lick" in a call with defendant to mean, "firing a gun," and thus this could have referred to another uncharged shooting. We reject this argument. First, defendant has failed to establish that

Johnson's reference to another crime in this call is somehow connected to defendant. Second, and more importantly, after having reviewed the three jailhouse transcripts, many of the statements made during these calls, including the bits now highlighted, are fairly incomprehensible. Third, there was no evidence presented at trial suggesting there was an uncharged shooting between the morning murder and evening attempted murder, and defense counsel did, after all, file both pretrial and posttrial motions to bar all the jailhouse calls. Defendant's argument as to ineffectiveness is baseless, and only speculative at best, which is insufficient to satisfy the requisite standard. See *People v. Johnson*, 2021 IL 126291, ¶ 52 (to prevail on such a claim, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice); *People v. Patterson*, 2014 IL 115102, ¶ 81 (requiring a showing of actual prejudice and not simply speculation of prejudice). We reach the same conclusion as to defendant's other ineffectiveness claim about the stipulation. Defendant also neglects to acknowledge his counsel skillfully gained an acquittal of the murder charge against defendant.

¶ 21    Last, even assuming any impropriety, defendant cannot establish prejudice since the evidence relating to his attempted murder charge was substantial, if not overwhelming. In other words, for an ineffective assistance claim, defendant cannot establish there is a reasonable probability that but for counsel's claimed errors the result of the proceeding would have been different. See *Johnson*, 2021 IL 126291, ¶ 52. Similarly, for any evidentiary argument, defendant cannot establish the claimed errors contributed to his conviction in the face of the substantial-to-overwhelming evidence supporting his guilt, and any error was harmless. See *People v. Lerma*, 2016 IL 118496, ¶ 33; see also *People v. McBride*, 2020 IL App (2d) 170873, ¶ 34 (distinguishing between evidentiary and constitutional harmless error standards); *People v.*

*Green*, 2017 IL App (1st) 152513, ¶ 118 (finding no cumulative error where the alleged errors do not amount to reversible error on any one issue).

¶ 22                                    CONCLUSION

¶ 23     For the reasons stated, we affirm the judgment of the circuit court. We direct the clerk of the circuit court to correct the mittimus to reflect a sentence of 38 years on Count 3, to run concurrently with a sentence of 38 years on Count 4, along with the concurrent sentence of 3 years for AUUW on Count 10. See, *supra* fn. 2; see also Ill. S. Ct. R. 615(b) (eff. May 19, 2021); *People v. West*, 2017 IL App (1st) 143632, ¶ 102.

¶ 24     Affirmed; Mittimus Corrected.