NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 230407-U

NO. 4-23-0407

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JAMES EARL CHASE, | ) | No. 21CF1212 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed in part the judgment of the trial court because (1) the trial court conducted an adequate inquiry into defendant's *pro se* posttrial allegations of ineffective assistance of counsel and (2) defense counsel filed a proper Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) certificate. The appellate court vacated in part the judgment of the trial court and remanded for further proceedings because defense counsel provided ineffective assistance of counsel by failing to seek a waiver of assessments.

¶ 2    In November 2021, the State charged defendant, James Earl Chase, with three counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2020)), a Class 2 felony. In December 2022, defendant pleaded guilty to one of the counts in exchange for the dismissal of the remaining two counts and a cap on the State's sentencing recommendation of five years in prison. In February 2023, the trial court sentenced defendant to four years in prison.

¶ 3    In March 2023, defendant, through counsel, filed a motion to withdraw his guilty plea. That same month, defendant *pro se* sent correspondence to the trial court that contained

allegations of ineffective assistance of counsel.

¶ 4    In May 2023, the trial court conducted (1) a hearing on defendant's motion to withdraw his guilty plea and (2) a preliminary *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) into defendant's complaints about his attorney. The court denied the motion to withdraw defendant's guilty plea and found no basis to appoint new counsel to investigate defendant's claims of ineffective assistance.

¶ 5    Later that same month, defendant *pro se* filed an application for a waiver of assessments, which the trial court subsequently denied as untimely.

¶ 6    Defendant appeals, arguing that (1) the trial court erred by not conducting an adequate *Krankel* inquiry, (2) defense counsel failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), (3) defense counsel was ineffective for failing to file an application for a waiver of assessments, and (4) the trial court erred by denying defendant's *pro se* application for a waiver of assessments on timeliness grounds. We disagree with defendant's first and second arguments but agree with his third argument (and therefore need not reach his fourth). Accordingly, we affirm in part and vacate in part the judgment of the trial court and remand for defendant to file an application for a waiver of assessments.

¶ 7                                I. BACKGROUND

¶ 8                      A. The Charges and Preplea Proceedings

¶ 9    In November 2021, the State charged defendant with three counts of unlawful delivery of a controlled substance (cocaine), a Class 2 felony (720 ILCS 570/401(d)(i) (West 2020)), based upon controlled buys conducted by the Bloomington Police Department on three separate dates in August and September 2021. The charges alleged that, on each of those dates, defendant sold less than one gram of cocaine to an undercover source. The court issued a warrant

for defendant's arrest.

¶ 10　　In December 2021, defendant was arrested and appeared in custody before the trial court. At that appearance, defendant completed an affidavit of assets and liabilities, stating that he had an income of $1,200 per month from his employment and paid $400 per month for his rent or mortgage. The court appointed the public defender to represent defendant and released him from custody on a $50,000 recognizance bond.

¶ 11　　Later in December 2021, defendant appeared with his appointed counsel, Assistant Public Defender Mark Messman, and the trial court arraigned defendant on the charges. In January 2022, defendant appeared with Messman for a status hearing, at which Messman requested, and the court granted, a continuance to March 2, 2022.

¶ 12　　On March 2, 2022, defendant failed to appear for the scheduled status hearing, and the trial court issued an arrest warrant. On March 31, 2022, defendant was arrested on the warrant and again appeared before the trial court. He completed another affidavit of assets and liabilities, this time stating that he was unemployed, with no income. He did not list any liabilities. The court set defendant's bond at $10,000, remanded him into the custody of the sheriff, and set the case for status on April 15, 2022.

¶ 13　　On April 15, 2022, defendant appeared with his counsel, Messman, who requested a further continuance to April 22, 2022, for hearing on a motion to reduce bond that defendant had requested Messman to file but which had not yet been filed. On April 22, 2022, Messman informed the court that defendant, who was in custody, had tested positive for COVID-19. As a result, Messman asked to reschedule the hearing. The trial court agreed and continued the hearing to May 13, 2022.

¶ 14　　On May 2, 2022, the circuit clerk file-stamped a letter from defendant to the circuit

clerk, dated April 24, 2022, asking that his next court date be advanced from May 13, 2022, to April 29, 2022. He also asked the clerk, "[H]ow many days so far do I have towards my clock on speedy trial days thus far?"

¶ 15 On May 4, 2022, defendant *pro se* filed additional correspondence, stating that he believed Messman was ineffective and wished for Messman to be "released" as his lawyer. Defendant wrote that he was unable to "get [Messman] to reply or contact me in any fashion."

¶ 16 On May 13, 2022, defendant appeared with Messman for a hearing on the motion to reduce bond. At this hearing, the trial court gave Messman a copy of defendant's May 4 letter so Messman could discuss it with defendant. The court remarked that the case was not at a stage where a *Krankel* hearing would be appropriate.

¶ 17 The trial court then addressed defendant's motion to reduce bond. Defendant testified that he missed the March 2, 2022, court date because he was at the Rivian automobile plant in Normal, Illinois, "taking an assessment for employment there." He further testified that he was offered a position at Rivian that would start "immediately." The court released defendant from custody on a $10,000 recognizance bond. Messman requested a continuance, and the court set the case for status on June 3, 2022.

¶ 18 On June 3, 2022, defendant appeared with Messman, who asked for an August 2022 trial date. The court set the case for final status on August 11, 2022, and a jury trial on August 15, 2022.

¶ 19 On August 11, 2022, defendant failed to appear. Assistant Public Defender Matthew Koetters appeared on defendant's behalf and told the trial court that defendant had been hospitalized two weeks prior but was no longer at the hospital. Koetters did not know where defendant was and asked the court to remove the case from the trial calendar and set a status

hearing in September 2022. The court agreed and set the case for status on September 29, 2022.

¶ 20    On September 29, 2022, defendant appeared in court with his counsel, Assistant Public Defender Mackenzie Frizzell. Frizzell asked for further continuance because she was still reviewing discovery. The trial court set the case for final status on November 4, 2022. (We note that the record does not identify the precise dates that Messman ceased representing defendant, but his signature appears on an August 15, 2022, notice of hearing. Likewise, the record does not identify the precise date Frizzell began representing defendant, but she appeared with him on September 29, 2022.)

¶ 21    On November 4, 2022, defendant again appeared with Frizzell, who told the trial court that defendant had suffered a stroke and requested additional time to "process how he would like to go forward with this case." The court granted counsel's request for a continuance and set the case for status on December 1, 2022.

¶ 22                        B. The Guilty Plea and Sentencing Hearing

¶ 23    On December 1, 2022, defendant tendered, and the trial court accepted, a plea of guilty to one count of delivery of cocaine, a Class 2 felony, in exchange for the State's (1) agreement to cap its sentencing recommendation at five years in prison and (2) dismissal of the remaining two counts.

¶ 24    In February 2023, the trial court conducted defendant's sentencing hearing. Relevant to this appeal, the presentence investigation report (PSI) provided that at the time of the hearing, defendant was employed full-time at Rivian as a manufacturer and worked 12-hour shifts, earning $20 per hour. Defendant had been employed full-time at Rivian, either as a Rivian employee or contract employee, since July 2022. Defendant was divorced and had an adult child. During argument, defense counsel stated that defendant had a savings account, was gainfully

employed, and was financially supporting his father.

¶ 25       Defendant stated the following in allocution:

"I've actually worked for a whole year out there at Rivian. I got hired on just recently as a call for me. I didn't apply, they asked me to join them for my work ethic. I show up every day, I work 10 to 12 hours every day. My free time all I do is take my son and granddaughter out to eat usually on the weekend. I'm helping my brothers out with my real dad, trying to move him back to Indiana. All those expenses, I'm still able to make a savings account. I've never had one before since I was 19 years old. I'm into the stock market now. I've become what I consider successful from where I've never been before."

¶ 26       When sentencing defendant, the trial court made the following remarks regarding defendant's employment:

"The job at Rivian is certainly a good job. Rivian does a good job of hiring people that are involved in the court system, and giving them high-paying jobs. There are quite a few of the individuals that are employed at Rivian that come through this courtroom."

The court sentenced defendant to four years in prison and imposed a $75 fine, a $300 street value fine, and "all the fines, fees, and costs as set forth in the supplemental sentencing order." Defendant's fines, fees, costs, and assessments totaled $2,805.

¶ 27       After the trial court imposed its sentence, the following colloquy occurred regarding a waiver of the assessments:

"[DEFENSE COUNSEL]: Judge, does the court accept waivers of court costs, or applications for waivers of court costs at sentencing?

THE COURT: You can file the application. I'm not going to sign the order today, but you can submit the application.

[DEFENSE COUNSEL]: Okay.

THE COURT: Unless he is on one of the government subsidy programs that are listed, and has proof of that.

[DEFENSE COUNSEL]: I think—

THE COURT: I assume that, based on his current employment at Rivian, he's not receiving SNAP benefits or any of the other benefits that are listed on there. If he is and has evidence of that, then I'll be happy to sign the order."

¶ 28                                  C. The Postplea Proceedings

¶ 29        In March 2023, defendant *pro se* filed a letter, stating that (1) he had been unable to contact his attorney, Frizzell and (2) he wished to withdraw his guilty plea. He also wrote that he wished to have Frizzell "dismissed" and to hire an "outside lawyer."

¶ 30        The following day, Frizzell filed a motion to withdraw defendant's guilty plea, alleging only that defendant's plea "was in error."

¶ 31        Later that same month, defendant filed another *pro se* letter, stating that Frizzell had been "absent from this case *** since it was dumped in her lap except for the two moments before a scheduled court appearance regardless [of] how many times I attempted to contact her." He also asserted that he had asked Frizzell to file three motions: (1) to withdraw his guilty plea, (2) to dismiss due to a speedy trial violation, and (3) to substitute judge.

¶ 32        The following week (still in March 2023), Frizzell filed an amended motion to withdraw defendant's guilty plea, alleging that defendant "did not fully understand the plea or the consequences thereof, and that his plea was therefore involuntarily made." Frizzell attached to the

motion a Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)) certificate, in which she certified that she had (1) consulted with defendant to ascertain his contentions of error, (2) examined the trial court file and report of proceedings of the plea of guilty and sentencing hearing, and (3) made any amendments necessary for the adequate presentation of any defects in those proceedings.

¶ 33    On May 5, 2023, the trial court conducted (1) a preliminary *Krankel* inquiry and (2) a hearing on defendant's amended motion to withdraw his guilty plea.

¶ 34                          1. *The Preliminary* Krankel *Inquiry*

¶ 35    The trial court asked defendant to state his concerns with Frizzell's representation. Relevant to this appeal, defendant told the court that he had difficulty reaching Frizzell to discuss trial strategies. Specifically, defendant stated:

> "These strategies were important at the time because the individual I needed to get ahold of [(Lucious Scott)] to counter the State's witness was dying of cancer. And I've been unable to find out whether he's even alive anymore or not. My people in the world have not been able to reach him. So that's going to hinder me."

¶ 36    Defendant also complained that no "speedy trial violation motion" was ever filed, noting that, when Frizzell took the case over from Messman, she claimed she had reviewed the entire file, which contained defendant's letters to Messman and the circuit clerk stating that defendant wished to pursue a speedy trial.

¶ 37    The trial court invited Frizzell to respond to defendant's allegations. Regarding defendant's alleged attempts to contact Frizzell to discuss the potential witness, Frizzell stated that "this is the first time I'm ever hearing the name Lucious Scott." Frizzell then outlined her history of meetings and phone calls (or attempts to return phone calls) with defendant during September, November, and December 2022, which included discussions about, among other things, possible

trial defenses, defendant's health concerns, and "what we were going to be doing at his future court date." Regarding the continuances and violation of defendant's speedy trial right, Frizzell stated, "I believe that all pertains to his prior attorney's representation, not during my representation as of September *** when I took over the caseload."

¶ 38 The trial court found that (1) there was no speedy trial violation and (2) the remainder of the issues defendant raised involved trial strategy. Because defendant's *pro se* ineffective assistance claims lacked merit or pertained solely to trial strategy, the court found that no reason existed to appoint new counsel to further investigate defendant's claims.

¶ 39 2. *The Amended Motion To Withdraw the Guilty Plea*

¶ 40 The trial court then addressed defendant's amended motion to withdraw his guilty plea. Frizzell called defendant to testify in support of his motion, and the following colloquy occurred:

"Q. And if you could briefly tell the Court why it is that you believe you should have your plea of guilt back.

A. As I recall, I was in the galley having to have that hearing or plea entered. I am very hard [of] hearing and have to read lips, so it's very difficult when I'm that far away, and I'm half blind, too. But there's a part in there, once you read the transcript, talks about was there coercion or coerced or whatever like that. I didn't catch that part, and I felt that I was.

Q. How is it that you feel that you were coerced into a plea?

A. You see throughout all of my letters, starting with *** Messman and through you, that my whole plan was to go to trial. *** It wasn't until the very last hearing I had with Mr. Messman that he came to me and told me specifically that

- 9 -

[the prosecutor] came to him and asked him to tell me that if I do not take the plea, the open plea, that he would definitely send me to prison anyway even if I wanted trial on this particular matter.

* * *

Q. Okay. And you believed that it was that prior reiteration from the State from Mark Messman that you would receive a higher penalty that influenced your plea ***?

A. Yes, ma'am."

¶ 41 The trial court denied defendant's motion, finding as follows:

"There are oftentimes discussions with attorneys where attorneys will tell a defendant that they have significant exposure to lengthy prison sentences and that the best option is to enter a plea of guilty to a negotiated plea. The fact that that took place in this case is nothing out of the ordinary. ***

*** I have no doubt, based on Ms. Frizzell's representation, *** that Mr. Messman probably had that discussion with the defendant. But it doesn't change the fact that at the time of this plea agreement the defendant knew what he was doing, understood what he was doing, and voluntarily and knowingly did what he did, which was to plead guilty with a cap."

¶ 42 3. *The Pro Se Application for a Waiver of Assessments*

¶ 43 Later in May 2023, defendant *pro se* filed an application for a waiver of assessments pursuant to section 124A-20 of the Code of Criminal Procedure of 1963. 725 ILCS 5/124A-20 (West 2022)). In the verified form application, defendant indicated that he was living at the Centralia Correctional Center and supported no adults or children. He also checked

preprinted boxes indicating that he was receiving the following government benefits: (1) "Temporary Assistance to Needy Families (TANF)" and (2) "General Assistance (GA), Transitional Assistance, or State Children and Family Assistance."

¶ 44        The following week, still in May 2023, the trial court entered a written order denying defendant's application, finding that the application "was not filed within the time limited by law" because "Defendant was sentenced on [February 1, 2023]."

¶ 45        This appeal followed.

¶ 46                                    II. ANALYSIS

¶ 47        Defendant appeals, arguing that (1) the trial court erred by not conducting an adequate *Krankel* inquiry, (2) defense counsel failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), (3) defense counsel was ineffective for failing to file an application for a waiver of assessments, and (4) the trial court erred by denying defendant's *pro se* application for a waiver of assessments on timeliness grounds. We disagree with defendant's first and second arguments but agree with his third argument (and therefore need not reach his fourth). Accordingly, we affirm in part and vacate in part the judgment of the trial court and remand for defendant to file an application for a waiver of assessments.

¶ 48                    A. The Trial Court's Inquiry Satisfied *Krankel*

¶ 49        Defendant argues that the trial court erred by failing to (1) conduct an adequate inquiry into the factual basis for his claims of ineffective assistance and (2) appoint new counsel to further investigate those claims. We disagree.

¶ 50                                    1. *The Law*

¶ 51        When a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel, Illinois courts employ the common-law procedure established by *Krankel*. *People v. Jackson*, 2020

- 11 -

IL 124112, ¶ 95. That procedure (1) "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims" and (2) "is intended to promote consideration of *pro se* ineffective assistance claims in the trial court and to limit issues on appeal." *People v. Patrick*, 2011 IL 111666, ¶¶ 39, 41.

¶ 52    But new counsel is not automatically appointed whenever a defendant claims ineffective assistance. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). Instead, when a defendant makes such a claim, the trial court should first examine its factual basis. *Jackson*, 2020 IL 124112, ¶ 97. "If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the motion." *People v. Roddis*, 2020 IL 124352, ¶ 35. But if the allegations show possible neglect of the case, new counsel should be appointed to independently evaluate the defendant's *pro se* claim of ineffective assistance and represent the defendant at a hearing on that claim. *Jackson*, 2020 IL 124112, ¶ 97.

¶ 53    We review the manner in which the trial court conducted its *Krankel* hearing *de novo*. *Roddis*, 2020 IL 124352, ¶ 33. "However, when a trial court has properly conducted a *Krankel* hearing, this court will review the trial court's determination that a defendant's claim does not demonstrate a possible neglect of the case by asking if that decision is manifestly erroneous." *People v. Lawson*, 2019 IL App (4th) 180452, ¶ 43. "A decision is manifestly erroneous 'when the opposite conclusion is clearly evident.' " *Id.* (quoting *People v. Coleman*, 2013 IL 113307, ¶ 98).

¶ 54                    2. *This Case*

¶ 55    At the *Krankel* hearing, defendant raised two categories of complaints: (1) Frizzell's lack of communication, which defendant contends hindered his ability to investigate Scott as a witness and (2) Messman's failure to assert defendant's speedy trial rights. On appeal,

defendant contends that the trial court failed to adequately inquire into these claims. Specifically, defendant contends that the court should have (1) "asked [defendant] for specifics about what [Scott] would say and how it would have added to a defense to the charge[s]" and (2) ascertained from Messman "what [he] had been told, and why he did or did not do certain things." According to defendant, because of the court's failure to conduct these further inquiries, "it is not known whether [Scott] could establish a defense, and whether previous counsel knew about the speedy trial demand and the witness and chose not to pursue them, or why."

¶ 56                                                   a. Potential Witness

¶ 57            We first address defendant's arguments relating to Scott as a potential witness. It is important to note that, at the *Krankel* hearing, defendant complained that *Frizzell's* lack of communication with him hindered his ability to pursue Scott as a potential trial witness. At the hearing, however, Frizzell addressed both her communication with defendant and the issue of Scott as a witness when she (1) asserted that the *Krankel* hearing was the first time she had heard about Scott as a potential witness and (2) detailed the history of her meetings and phone calls with defendant, during which they discussed, among other things, potential defenses. Defendant appears to acknowledge that Frizzell's representations rebut his complaint about her performance because now, on appeal, he asserts that somehow the court failed by asking *Messman* about his knowledge and decision-making regarding Scott.

¶ 58            We disagree that the court should have set another hearing to question Messman about Scott. Putting aside the fact that defendant did not raise any complaints about Messman at the *Krankel* hearing, whether defendant had any conversation with Messman about Scott is completely irrelevant because Messman ceased representing defendant in August 2022. Frizzell took over as counsel in September 2022 and met with defendant to discuss all aspects of his case,

including possible defense strategies at trial. During this time, defendant never mentioned Scott to Frizzell. Relying on her advice—and not Messman's—defendant elected in December 2022 to plead guilty.

¶ 59    To establish a claim of ineffective assistance in the guilty plea context, a defendant must demonstrate that (1) "his counsel's performance fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *People v. Brown*, 2017 IL 121681, ¶¶ 25-26. Even if we assumed, for argument's sake, that Messman somehow performed deficiently as it relates to Scott, defendant cannot demonstrate that, but for whatever Messman knew or did not know, or did or did not do, defendant would not have pleaded guilty *because he pleaded guilty while represented by Frizzell*, to whom he never even mentioned Scott.

¶ 60    We also conclude that the trial court did not err by failing to ask defendant for "specifics" about what Scott's testimony would have been. The question before the court was whether there was any merit to defendant's claim that Frizzell rendered ineffective assistance by failing to communicate with defendant such that he was unable to discuss with her a potential witness. The court had more than enough information to answer that question when Frizzell asserted—and defendant did not contest—that (1) she had multiple conversations with defendant about trial strategy and (2) he never told her about Scott. Frizzell could not have been ineffective for failing to investigate a witness defendant never told her about.

¶ 61                      b. Speedy Trial Issues

¶ 62    Defendant's speedy trial complaints can be divided into two categories: whether defense counsel provided ineffective assistance by (1) asking for continuances instead of

demanding a speedy trial and (2) failing to file a motion to dismiss based upon a speedy trial violation. We address each contention in turn.

¶ 63    Defendant argues that the trial court conducted an inadequate *Krankel* inquiry because the court failed to inquire "whether [Messman] knew about the speedy trial demand \*\*\* and chose not to pursue [it], or why."

¶ 64    As an initial matter, we note that defendant's argument demonstrates a fundamental misunderstanding of the purpose of a *Krankel* hearing, which applies only to posttrial *pro se* claims of ineffective assistance. *People v. Jolly*, 2014 IL 117142, ¶ 29. The purpose of a *Krankel* hearing is to ensure that no conflict exists between a defendant's interests and the interests of the attorney arguing his ineffective assistance of counsel claim. See *Roddis*, 2020 IL 124352, ¶ 36 ("[C]ounsel [appointed under *Krankel*] can independently evaluate the claim and avoid the conflict of interest that trial counsel would have in trying to justify his or her own actions contrary to the defendant's position."). Because the purpose of a *Krankel* hearing is to avoid the conflict of current counsel arguing his or her own ineffectiveness, only Frizzell's actions were relevant at the *Krankel* hearing. That is to say, Messman's alleged deficiencies were totally irrelevant because Frizzell had no conflict affecting her ability to raise ineffective claims relating to Messman's speedy trial decisions, if such claims had merit.

¶ 65    Regardless, we conclude that any inquiry into Messman's speedy trial decisions was unnecessary because the decision to seek a continuance is generally a strategic decision asserted by counsel. See *People v. Ramey*, 151 Ill. 2d 498, 523 (1992).

¶ 66    A defendant is bound by his trial counsel's request for a continuance unless the defendant (1) clearly and convincingly objects and (2) asserts his or her right to discharge counsel and proceed to an immediate trial. *People v. Kaczmarek*, 207 Ill. 2d 288, 297 (2003). "[T]he record

need not affirmatively show that counsel consulted with and received the consent of [the] defendant regarding counsel's request or agreement to a continuance." *People v. Teen*, 2023 IL App (5th) 190456, ¶ 30 (citing *People v. Bowman*, 138 Ill. 2d 131, 142 (1990)). "[A] [defendant] who does not promptly repudiate [his] attorney's unauthorized act upon receiving knowledge of such an act has effectively ratified the act." *Bowman*, 138 Ill. 2d at 143.

¶ 67     In the present case, when appearing in court with Messman, defendant never repudiated Messman's requests for a continuance. Additionally, although defendant wrote to the circuit clerk on May 4, 2022, asking to advance his court date and inquiring about his speedy trial calculation, at the very next court date, on May 13, 2022, defendant did not object when Messman requested a continuance. Accordingly, Messman's decisions about seeking continuances were rational matters of strategy that defendant never repudiated, and the court had sufficient information about the legal and factual bases for defendant's claim to conclude that Messman had not been ineffective by seeking continuances.

¶ 68     Defendant's complaint that no motion to discharge for a speedy trial violation was filed is also refuted by the record. The Illinois Speedy Trial Act is violated if the State fails to try a defendant within 120 days of his entry into custody. 725 ILCS 5/103-5(a) (West 2022). Here, defendant was arrested and in custody beginning on December 8, 2021, but he was released the same day on a recognizance bond. Later, when defendant was arrested on a failure to appear warrant, he was in custody from March 30, 2022, until May 13, 2022, when the trial court again released him on a recognizance bond. That is to say, defendant spent only 46 days in custody

¶ 69     Although a defendant who was in custody but was released on a recognizance bond may demand that he be tried within 160 days from the date he demands a trial (*id.* § 103-5(b)), as we have discussed, defendant never demanded a speedy trial but instead acquiesced to his

attorneys' requests for continuances in open court. Accordingly, the trial court properly found that defendant's speedy trial act allegations lacked merit.

¶ 70                           B. Trial Counsel Did Not Fail To Comply With Rule 604(d)

¶ 71         Defendant next argues Frizzell failed to comply with the requirements of Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) because she did not make necessary amendments to the motion to withdraw defendant's guilty plea. Specifically, defendant contends that Frizzell failed to allege the ineffective assistance claims he raised at the *Krankel* hearing, that (1) "counsel failed to investigate and obtain testimony from [Scott]" and (2) "[defendant] requested no continuances."

¶ 72                           1. *The Applicable Law*

¶ 73         "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea. *In re H.L.*, 2015 IL 118529, ¶ 7. The rule imposes duties on defense counsel as follows:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 74         Counsel must strictly comply with Rule 604(d). *People v. Brown*, 2023 IL App (4th) 220573, ¶ 30. Even when counsel files a facially compliant Rule 604(d) certificate, remand

may still be required if the record shows counsel failed to comply with his or her obligations under the rule. *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 36. We review *de novo* whether counsel complied with Rule 604(d). *Id.* ¶ 30.

¶ 75                                                    2. *This Case*

¶ 76            Defendant does not dispute that Frizzell filed a facially compliant Rule 604(d) certificate but instead asserts that the record rebuts her assertion that she made all the necessary amendments to the motion to withdraw defendant's guilty plea because she did not include the two ineffective assistance claims defendant raised at the *Krankel* hearing.

¶ 77            We disagree. The record does not rebut Frizzell's claim that she made all necessary amendments but instead supports her claim; that is to say, as we have discussed (*supra* ¶¶ 55-69), the record establishes that both of defendant's claims were indisputably meritless.

¶ 78            "[T]o prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that his attorney's representation fell below an objective standard of reasonableness and (2) that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *People v. Torres*, 2024 IL 129289, ¶ 27. "A defendant's failure to satisfy either prong *** precludes a finding of ineffective assistance of counsel." *Id.*

¶ 79            Regarding Scott, defendant cannot show that Frizzell's representation fell below an objective standard of reasonableness because the record shows, despite multiple conversation with Frizzell prior to entering his guilty plea, defendant never told her about Scott. The first time Frizzell heard Scott's name was at the *Krankel* hearing. Because defendant pled guilty without bringing Scott to Frizzell's attention, a claim that defendant's guilty plea was entered as a result of ineffective assistance by Frizzell for failing to investigate a witness defendant never told her about is completely without merit.

¶ 80 Regarding the requests for continuances, defendant cannot show that Messman's representation fell below an objective standard of reasonableness because (1) whether to seek a continuance is generally a strategic decision asserted by counsel (*Ramey*, 151 Ill. 2d at 523) and (2) the docket sheet and report of proceedings demonstrate that defendant never repudiated Messman's requests for continuances when they were made in open court but instead ratified them. See *Bowman*, 138 Ill. 2d at 143 ("[A] [defendant] who does not promptly repudiate [his] attorney's unauthorized act upon receiving knowledge of the act has effectively ratified the act."). Frizzell cannot be ineffective for failing to raise a meritless claim.

¶ 81 Because the record affirmatively establishes that both claims lack merit, the record does not rebut Frizzell's assertion in her Rule 604(d) certificate that she made all amendments necessary for an adequate presentation of any defects in the plea and sentencing proceedings. See *People v. Black*, 2022 IL App (4th) 210282-U, ¶ 34 ("Meritless legal claims are not 'necessary' amendments for purposes of Rule 604(d)."). Accordingly, we conclude that Frizzell did not file a defective Rule 604(d) certificate.

¶ 82 C. Trial Counsel Was Ineffective for Failing To File an Application for a Waiver

of Assessments

¶ 83 Defendant also argues that his trial counsel rendered ineffective assistance by failing to file an application for a waiver of assessments pursuant to 124A-20 of the Code of Criminal Procedure of 1963 (725 ILCS 5/124A-20 (West 2022)).

¶ 84 1. *The Applicable Law*

¶ 85 A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const. amend VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "Ineffective-assistance-of-counsel claims concerning a sentencing hearing must show that counsel's

performance fell below minimal professional standards and that a reasonable probability exists that the sentence was affected by the poor performance." *People v. Steidl*, 177 Ill. 2d 239, 257 (1997).

¶ 86        Section 124A-20(b)(1) of the Code of Criminal Procedure of 1963 provides that a defendant may apply for a waiver of assessments no later than 30 days after his or her sentencing. 725 ILCS 5/124A-20(b)(1) (West 2022). "Assessments" are defined as "any costs imposed on a criminal defendant under Article 15 of the Criminal and Traffic Assessment Act." *Id.* § 124A-20(a). Upon receiving an application for an assessment waiver by a defendant, the court shall exempt him from paying any assessments, so long as the court finds that the defendant is indigent. *Id.* § 124A(b)(1). There are three criteria under which a defendant is viewed as an "indigent person":

> "(1) He or she is receiving assistance under one or more of the following means-based governmental public benefits programs: Supplemental Security Income; Aid to the Aged, Blind and Disabled; Temporary Assistance for Needy Families; Supplemental Nutrition Assistance Program; General Assistance; Transitional Assistance; or State Children and Family Assistance.
>
> (2) His or her available personal income is 200% or less of the current poverty level, unless the applicant's assets that are not exempt under Part 9 or 10 of Article XII of the Code of Civil Procedure are of a nature and value that the court determines that the applicant is able to pay the assessments.
>
> (3) He or she is, in the discretion of the court, unable to proceed in an action with payment of assessments and whose payment of those assessments would result in substantial hardship to the person or his or her family." *Id.* § 124A-20(a).

- 20 -

¶ 87                                    2. *This Case*

¶ 88          In the present case, at the conclusion of defendant's sentencing hearing, defense counsel asked the trial court whether it accepted applications for waivers of assessments. Although the court expressed some skepticism that defendant was eligible for a waiver given his employment at Rivian, it also stated that, if defendant had evidence that he was receiving any of the government subsidies listed in the statute, the court would "happ[ily]" sign the order. However, counsel never filed the application, and defendant instead filed his own application from prison three months later, indicating on a preprinted form that he was, indeed, receiving "(1) "Temporary Assistance to Needy Families (TANF)" and (2) "General Assistance (GA), Transitional Assistance, or State Children and Family Assistance." The court summarily denied defendant's application on the grounds that it was not filed within 30 days of his sentencing, as required by statute.

¶ 89          Here, the record shows that defense counsel should have filed an application for a waiver of assessments. Defendant was represented by the public defender's office from the beginning of the case through its conclusion. Prior to obtaining employment at Rivian, defendant had been unemployed. Twice, defendant was unable to pay bond to secure his release and was only released upon the trial court's granting defendant a recognizance bond. Although defendant obtained employment at Rivian while the case was pending, information in the PSI about his income, assets, and liabilities was too general to determine that he was not indigent. The PSI did not contain any information about whether defendant was receiving government subsidies. Despite this, and despite counsel indicating that he intended to seek a waiver on defendant's behalf, counsel never followed through.

¶ 90          Defendant subsequently filed his own application, but it was too late. If defendant was indeed receiving general assistance, as he indicated in his application, he would have been

statutorily eligible for the waiver. However, defendant never had the opportunity to present evidence of his eligibility to the court. Because we conclude that (1) counsel performed deficiently by failing to timely file an application and (2) defendant was prejudiced by his counsel's failure, we remand the matter to provide defendant an opportunity to file an assessment waiver.

¶ 91                                  III. CONCLUSION

¶ 92         For the foregoing reasons, the judgment of the trial court is affirmed in part, vacated in part, and remanded to provide defendant or his counsel the opportunity to file an assessment waiver.

¶ 93         Affirmed in part, vacated in part, and remanded with directions.